THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: June 19, 2015

G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

Pamela Clay,                                             Case No. 14-27268-GMH

      Debtor.                                      Chapter 13

---

Pamela Clay,

      Plaintiff,

v.                                                  Adversary No. 14-2315-GMH

City of Milwaukee,

      Defendant.

---

## DECISION

---

Pamela Clay commenced this adversary proceeding to avoid under 11 U.S.C. §§522 and 548 the City of Milwaukee's tax foreclosure of her residence. She has moved for summary judgment. The City opposes that motion arguing that Ms. Clay received reasonably equivalent value when the City obtained the property through foreclosure.

I

This is a core proceeding under 28 U.S.C. §157(b)(2)(B), (H) and (O). The court has jurisdiction under 28 U.S.C. §1334 and the Eastern District of Wisconsin's order of reference entered pursuant to 28 U.S.C. §157(a). See Order of Reference (E.D. Wis. July 16, 1984), *available at* http://www.wied.uscourts.gov/index.php?option=com _content&task= view&id=15&Itemid=123. This decision states my reasons for granting Ms. Clay's motion for summary judgment under Federal Rule of Civil Procedure 56(a), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056.

The City, in opposing Ms. Clay's request for summary judgment, did not contend that this court lacks the authority to enter summary judgment on her claim under §§522 and 548 nor did it otherwise contend that a judgment can only be entered by an Article III judge. See *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Consequently, the City has consented to final adjudication by this court.[1] See *Wellness Int'l Network, Ltd. v.*

---

[1] Ms. Clay's claims against the City are not novel ones, and the City is well aware of the right to refuse its consent to the bankruptcy court's final adjudication of *Stern* claims. See, e.g., *Williams v. City of Milwaukee (In re Williams)*, Adv. No. 11-02527, CM-ECF, Doc. No. 61 at 1–4. Congress, moreover, has explicitly authorized bankruptcy courts' entry of final judgments resolving disputes over debtors' exemptions, fraudulent conveyances, and adjustments of debtor-creditor relationships. 28 U.S.C. §157(b)(2)(B), (H), & (O). No controlling authority or clear constitutional principle authorizes this court to ignore that congressional command, especially when the parties have not raised the issue. The claim here is notably unlike the state-law claim that *Stern* held was reserved for final adjudication by an Article III court. Ms. Clay's claim is a fraudulent conveyance claim to avoid an involuntary transfer made for less than reasonably equivalent value that impairs one of her exemptions (themselves created by the Bankruptcy Code) from property of the estate (also a construct created solely by operation of the Bankruptcy Code). See 11 U.S.C. §§522, 541. In addition, fraudulent conveyance is a bankruptcy construct originating under pre-1789 English law, which colonists transplanted in the United States. See CHARLES JORDAN TABB, THE HISTORY OF THE BANKRUPTCY LAWS IN THE UNITED STATES, 3 Am. Bankr. Inst. L. Rev. 5, 7–23 (1995). Before and after 1789, laws in England and the United States vested fraudulent conveyance authority in commissioners who were neither judges nor chancellors. The Sixth Congress, for example, bestowed on non-Article III commissioners the authority to assign property that a debtor conveyed to others before being made subject to bankruptcy proceedings; the assignment to these third parties was in "the same . . . manner as if the [debtor] had been actually seised or [in] possession [of the property]." Bankruptcy Act of 1800, Sec. 17, 2 Stat. 19, repealed by Act of Dec. 19, 1803. The fraudulent conveyance claim at issue here is one created by Congress using its authority under Article I, §8 of the Constitution to enact uniform bankruptcy laws and is not a common-law claim necessarily reserved for decision by an Article III judge.

*Sharif*, 135 S. Ct. 1932, 1944–46 (2015).

The court may enter summary judgment for Ms. Clay if she shows that there is no genuine issue of material fact and she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The parties have agreed on the relevant facts.

II

A

Ms. Clay owned real estate located at 3787 North 12th Street in Milwaukee (the "Property"). CM-ECF, Doc. No. 21, ¶3. The City commenced an in rem tax foreclosure against the Property less than a year before Ms. Clay filed her current bankruptcy case. *Id.* at ¶¶3–4. The tax foreclosure judgment the City obtained on June 2, 2014, foreclosed Ms. Clay's interest in the Property. *Id.* at ¶3. On the date that the tax foreclosure judgment was entered the Property was worth $40,700. *Id.* at ¶8. At the same time, Ms. Clay was insolvent, and she owed the City $11,259.21 for delinquent real estate taxes on the Property. *Id.* at ¶¶5, 7. Chase Home Finance had a mortgage on the Property that secured a debt of approximately $25,000. *Id.* at ¶6. Ms. Clay has fully exempted her interest in the Property. *Id.* at ¶9.

B

Section 522(h) of the Bankruptcy Code authorizes a debtor to "avoid a transfer of property of the debtor . . . to the extent that the debtor could have exempted such property under subsection (g)(1) . . . [i.e., the transfer was involuntary and not concealed by the debtor] if the trustee had avoided such transfer" and "such transfer is avoidable by the trustee under section . . . 548 [among others]" but only if "the trustee does not attempt to avoid such transfer". 11 U.S.C. §522(h)(1)–(2). Section 548 provides that a trustee may avoid a transfer of the debtor's property that occurred within two

---

See *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 906–08 (Bankr. N.D. Ill. 2012) (holding that final adjudication of fraudulent transfer claims under 11 U.S.C. §548 is not constitutionally reserved to Article III courts).

years of the filing of her bankruptcy petition when the debtor was insolvent at the time the transfer was made and, as relevant here, she "received less than a reasonably equivalent value in exchange for such transfer". §548(a)(1)(B)(i)–(ii)(I).

III

A

The parties agree that Ms. Clay has established most of the elements of her avoidance claim: The City obtained the Property by tax foreclosure within a year of Ms. Clay filing for bankruptcy, Ms. Clay was insolvent at the time of the tax foreclosure, and Ms. Clay has indicated her intent to exempt the Property. The City contests only whether Ms. Clay failed to receive reasonably equivalent value.

The City acknowledges that at the time of the foreclosure, the Property was worth $40,700, and it was subject to (a) the City's $11,259.21 tax lien and (b) a mortgage, which the parties estimate secured a debt of $25,000. The City does not contend that eliminating debt of $11,259.21 is reasonably equivalent to the Property's $40,700 value. Instead, the City argues that the tax foreclosure extinguished the mortgage, because it foreclosed Chase Home Finance's "right, title and interest in and to" the Property pursuant to Wis. Stat. §75.521(5), and this too benefited Ms. Clay. CM-ECF Doc. No. 26, 3. It argues further that "[o]n a practical level" Chase Home Finance is not likely to pursue Ms. Clay for payment of the underlying debt. *Id.*

From these premises, the City contends that in evaluating whether Ms. Clay received reasonably equivalent value for her tax-foreclosed home one must add the value of Ms. Clay's mortgage loan to the value of the tax debt. *Id*. On this theory, Ms. Clay received $36,259.21 (relief from the mortgage debt and the tax debt) in exchange for $40,700 (the Property's value when the City foreclosed). The City contends that these amounts are reasonably equivalent. *Id.* at 3–5.

B

"The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received." *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997). And "[e]quivalent value must be measured as of the time of the transfer." *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 589 (Bankr. N.D. Ill. 2005). Thus, the court must determine whether Ms. Clay's economic position immediately after the tax foreclosure was equivalent to her economic position immediately before the tax foreclosure.

It is indisputable that Ms. Clay was not in a similar economic position after the tax foreclosure. The parties agree that the tax foreclosure resulted in a transfer of Ms. Clay's $40,700 residence to the City. CM-ECF, Doc. No. 21, ¶¶3, 8. In exchange, Ms. Clay received only relief from the $11,259.21 tax debt she owed the City.

The tax foreclosure's elimination of the mortgage is not value received by Ms. Clay. Indeed, the tax foreclosure's elimination of Chase Home Finance's mortgage made Ms. Clay worse off, not better off. Before the foreclosure, she owed the City $11,259.21, and she owed Chase Home Finance $25,000. The Property, worth $40,700, secured both obligations and left her with $4,440.79 in equity. See Case No. 14-27268, CM-ECF, Doc. No. 11; Adversary No. 14-2315, CM-ECF Doc. No. 21.

The City's theory is that the foreclosure only made Ms. Clay worse off by the value of her lost equity. But the tax foreclosure did not satisfy Ms. Clay's debt to Chase Home Finance. See *Bank Mut. v. S.J. Boyer Constr., Inc.*, 2010 WI 74 ¶¶3, 27–47, 362 Wis. 2d 521, 785 N.W.2d 462. The tax foreclosure simply eliminated the mortgage, that is, it eliminated Chase Home Finance's right to collect the debt from the Property. See Wis. Stat. §§75.48, 75.521(5); *Leciejewski v. Sedlak*, 116 Wis. 2d 629, 639, 342 N.W.2d 734, 739 (1984) ("[A] tax deed is not derivative, but creates a new title that extinguishes all former titles and liens not expressly exempted from its operation."). After the tax

foreclosure, Ms. Clay remained personally liable to Chase Home Finance for the full amount of debt under the promissory note, which the mortgage had secured. See *Bank Mut.*, 2010 WI 74 at ¶47. The City concedes this: "Foreclosure of the Mortgage Lien, in and of itself, would not constitute a satisfaction or release in respect of the underlying debt [and that] [t]heoretically, the holder of the underlying debt remains free to pursue the debtor for payment thereof and the debtor retains personal liability therefor." CM-ECF Doc. No. 26, 3. The elimination of the mortgage is thus not a transfer of value to Ms. Clay—the tax foreclosure's elimination of the mortgage left her with the same amount of debt and fewer assets with which to pay that debt. See *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535–36 (1994) ("value means, for purposes of §548, property or *satisfaction* or securing of a debt of the debtor") (emphasis added) (internal quotations and omissions omitted); compare *4100 West Grand LLC v. Ty Grand LLC (In re 4100 West Grand LLC)*, 481 B.R. 444, 455–56 (Bankr. N.D. Ill. 2012) (holding that the transfer of a deed in exchange for full satisfaction of the debtor's loan obligation was reasonably equivalent value).

  The City argues that Ms. Clay's personal liability to Chase Home Finance can be ignored because she can discharge that liability in bankruptcy, and even if she hadn't filed for bankruptcy, the lender likely wouldn't sue her personally to enforce the note. CM-ECF, Doc. No. 26, 3–4. This ignores that the court must determine "reasonably equivalent value" by looking at the economic effect of the transfer when the transfer occurred. After the foreclosure, Ms. Clay remained personally liable on the note, and the foreclosure deprived her of the value of her home in excess of the tax debt, which the parties agree was more than $28,000. See CM-ECF, Doc. No. 21, ¶¶5, 6, & 8. As long as the mortgage was in place that value was available to Ms. Clay as a means of repaying the note or as security for other loans. The City's foreclosure deprived Ms. Clay of that asset value but left her with the personal obligation it secured. See *Bank Mut.*, 2010 WI 74 at ¶47. Whether Ms. Clay might later discharge the personal

obligation in bankruptcy or the lender might fail to enforce the obligation within the limitations period is simply irrelevant to whether Ms. Clay received reasonably equivalent value when the City took her residence through tax foreclosure.[2]

IV

The stipulated facts demonstrate that Ms. Clay did not receive reasonably equivalent value when the tax foreclosure transferred her residence to the City. Because the City's defense to Ms. Clay's avoidance claim is limited to the question of reasonably equivalent value, Ms. Clay is entitled to summary judgment. See Fed. R. Civ. P. 56.

The court will enter a separate judgment avoiding the tax foreclosure under 11 U.S.C. §§522(h) and 548.

So ordered.

# # # # #

---

[2] The City relies solely on *Hoffman v. Heritage Sav. & Loan Assoc. (In re Garrison)*, 56 B.R. 528 (Bankr. D. Colo. 1986). *Hoffman* is inapposite. The Colorado foreclosure procedure at issue there did not foreclose junior liens at the time of foreclosure. *Hoffman*, 56 B.R. at 529. As a result, the court held that it had to consider the value of the junior lienholders' rights to redeem the property when valuing the interest in the foreclosed property. *Id.* at 530. In Wisconsin, a tax foreclosure eliminates all consensual liens but does not eliminate a debtor's personal liability on the mortgage loan. For the reasons explained above, taking into account the full effect of the tax foreclosure under Wisconsin law, Ms. Clay did not receive reasonably equivalent value at the time of the foreclosure.